IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ADAM J. ROSH, M.D.,**

    Plaintiff,

vs.                                            Hon.
                                                Case No.: 20-

**THE GUARDIAN LIFE INSURANCE**
**COMPANY OF AMERICA,**

    Defendant.
_____

**COMPLAINT**

Plaintiff, ADAM J. ROSH, M.D., M.S., FACEP, FAAEM ("Dr. Rosh"), through his attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., states his Complaint against the above-named Defendant as follows:

**I.**      **Jurisdiction and Venue**

1) This is an action between citizens of different states:

    a) Plaintiff, Dr. Rosh is a Michigan citizen; and

    b) Defendant, The Guardian Life Insurance Company of America ("Guardian") is a New York citizen/corporation.

2) The amount-in-controversy exceeds $75,000.00, exclusive of fees, costs, and interest. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332.

3) Dr. Rosh also seeks a declaratory judgment, over which this Court has the power to declare the rights and remedies of the respective parties. (28 U.S.C. § 2201).

4) Venue is proper in the Eastern District of Michigan, as a substantial portion of the events or omissions giving rise to this claim occurred in this district.

## II. NATURE OF ACTION: BREACH OF CONTRACT

5) This is a claim for breach of contract of four disability income insurance policies issued by Guardian to Dr. Rosh, policies' owner and insured: 1) Z1488130 (7/1/08) - $5,000.00 per month; 2) Z1659750 (5/1/09) - $5,000.00 per month; 3) Z1672350 (5/1/09) - $5,000.00 per month; and 4) Z2605800 (5/1/13) - $3,000.00 per month.

## III. PARTIES

6) Dr. Rosh was, and continues to remain, a resident of Huntington Woods, MI.

7) Guardian is a New York insurance company authorized and engaged in the insurance business in Michigan and in the Eastern District of Michigan. Upon information and belief, Guardian's principal place of business is located in New York. Its registered agent for service of process is CSC-Lawyers Incorporating Service (Company), 601 Abbot Road, East Lansing, MI 48823.

## IV. FACTUAL STATEMENT

### A. Policies Overview

8) For, and in consideration of premiums paid beginning on or about July 1, 2008 and every month/year thereafter as required by each policy, Guardian issued Dr. Rosh four disability income insurance policies as follows:

2

a)    Policy Z1488130 was issued to Dr. Rosh (policy owner and insured) and provided for $5,000.00 in monthly indemnity benefits for his lifetime, following a 90-day elimination period, in the event of "Total Disability," defined to mean:

> **Total Disability**
> Total disability means that, because of sickness or injury, you are not able to perform the material and substantial duties of your occupation. Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.
>
> ***You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation***.
>
> ***If your occupation is limited to a single medical specialty certified by the American Board of Medical Specialties*** or a single dental specialty recognized by the American Dental Association, ***we will deem your specialty to be your occupation***. (Emphasis added).

b)    Policy Z1659750 was issued to Dr. Rosh (policy owner and insured) and provided for an approximate $5,000.00 in monthly indemnity benefits for his lifetime, following a 90-day elimination period, in the event of "Total Disability," defined to mean:

> **Total Disability or Totally Disabled**
> Total Disability or Totally Disabled means that, solely due to Injury or Sickness, You are not able to perform the material and substantial duties of Your Occupation. ***You will be Totally Disabled even if You are Gainfully Employed in another occupation so long as, solely due to Injury or Sickness, You are not able to work in Your Occupation***. (Emphasis added).
>
> **Your Occupation**
> Your Occupation means the occupation (or occupations, if more than one) in which You are Gainfully Employed during the 12 months prior to the time You became Disabled.
>
> ***If You have limited Your Occupation to the performance of the material and substantial duties of a single medical specialty*** or to a single dental specialty, ***We will deem that specialty to be Your Occupation***. (Emphasis

3

added).

c) Policy Z1672350 was issued to Dr. Rosh (policy owner and insured) and provided for an approximate $5,000.00 in monthly indemnity benefits, upon information and belief until age 65, following a 90-day elimination period, in the event of "Total Disability," defined to mean:

> **Total Disability or Totally Disabled**
> Total Disability or Totally Disabled means that, solely due to Injury or Sickness, You are not able to perform the material and substantial duties of Your Occupation.  ***You will be Totally Disabled even if You are Gainfully Employed in another occupation   so long as, solely due to Injury or Sickness, You are not able to work in Your Occupation***. (Emphasis added).
>
> **Your Occupation**
> Your Occupation means the occupation (or occupations, if more than one) in which You are Gainfully Employed during the 12 months prior to the time You become Disabled.
>
> ***If You have limited Your Occupation to the performance of the material and substantial duties of a single medical specialty*** or to a single dental specialty, ***We will deem that specialty to be Your Occupation***. (Emphasis added).

d) Policy Z2605500 was issued to Dr. Rosh (policy owner and insured) and provided for an approximate $3,000.00 in monthly indemnity benefits, upon information and belief until age 65, following a 90-day elimination period, in the event of "Total Disability," defined to mean:

> **TRUE OWN OCCUPATION RIDER**
> Total Disability or Totally Disabled means that, solely due to Injury or Sickness, You are not able to perform the material and substantial duties of Your Occupation.  ***You will  be Totally Disabled even if You are Gainfully Employed in some other capacity so long as You are not able to work in Your Occupation.***

4

9) The Policies do not fall under ERISA's purview, as they are individual disability policies issued directly to Dr. Rosh (owner and insured) in consideration of all premiums that were, in fact, paid by Dr. Rosh. The Policies have remained in full force and effect since their respective issues dates.

### B. Education, Work & Claim History

10) Dr. Rosh graduated from the University of Wisconsin in 1998 with a Baccalaureate in Biochemistry and Molecular Biology. **(Ex. 1)**.

11) Dr. Rosh obtained a Masters Degree in in Microbiology from the University of Wisconsin in 2000. **(Ex. 1)**.

12) Dr. Rosh obtained his medical degree from Rutgers-Robert Wood Johnson Medical School during 2004. **(Ex. 1)**.

13) Dr. Rosh completed his residency in Emergency Medicine at NYU Medical Center/Bellevue Hospital beginning 2004 through 2008; chief resident 2007-2008. **(Ex. 1)**.

14) Dr. Rosh became Board Certified in Emergency Medicine on June 16, 2009 and was recertified for the period January 1, 2020 through December 31, 2029. **(Ex. 2)**.

15) From August 2007 through June 2008, Dr. Rosh worked as an Emergency Medicine attending physician for Phelps Memorial Hospital, Sleepy Hollow, New York. **(Ex. 1)**.

16) Dr. Rosh worked for Detroit Receiving Hospital as an attending physician from July 2008 through June 2015. **(Ex. 1)**.

17) Dr. Rosh worked for Detroit Medical Center Huron Valley-Sinai Hospital as an attending physician beginning July 2008 through July 2012. **(Ex. 1)**.

18) Beginning July 2008 through June 2011, Dr. Rosh worked for Detroit Receiving Hospital as the Assistant Program Director of Emergency Medicine Residency. **(Ex. 1)**.

19) While working for Detroit Receiving Hospital as the Assistant Program Director, Dr. Rosh started Rosh Review, LLC[1] as a hobby on or about 11/2/11. **(Ex. 1)**.

20) From April 2012 through July 2012, Dr. Rosh worked for Detroit Receiving Hospital as the Assistant Program Director of Emergency Medicine Residency. **(Ex. 1)**.

21) From August 2012 through June 2015, Dr. Rosh worked for Detroit Receiving Hospital as the Emergency Medicine Program Director. **(Ex. 1)**.

22) Beginning March 2015 through June 2018, Dr. Rosh worked as a Locum Tenens' physician for Southern Ohio Medical Center ("SOMC"). **(Ex. 1)**.

23) While working as an Emergency Medicine physician, Dr. Rosh also continued to devote a minimal amount of time to Rosh Review, LLC as well as other income-generating hobbies, such as buying, selling, and renting commercial and residential properties.

24) When Dr. Rosh first started working for SOMC during March 2015, he worked approximately 70 hours-per-month.

---

[1] Rosh Review is an online company that creates medical and nursing education content that is delivered to learners throughout their training and prepares learners for board examinations. Rosh Review also provides continuing education credits. Rosh Review learners include medical, nursing, and PA students, medical residents and practicing physicians, nurse practitioners and physician assistants.

6

25) "Beginning in 2016, SOMC began transitioning from the practice of contracting with Locum Tenens' Emergency Medicine physicians to hiring full time emergency medicine physicians. It was due strictly to this business decision that Adam Rosh's employment ended on June 4, 2018." **(Ex. 3)**.

26) On January 11, 2019, Dr. Rosh was removing a Thule storage container from the roof of his vehicle and suffered a left distal biceps tendon tear which required surgical repair on January 15, 2019.

27) Beginning January 11, 2019 through the present, Dr. Rosh has been disabled under each of his four policies, as he has been, and remains, unable to perform the material and substantial duties of his occupation as an Emergency Medicine physician due to, *inter alia*, chronic pain, pain with range of motion and certain movements, and arm numbness.

28) On May 21, 2019, Dr. Rosh's orthopedic surgeon, Michael Freehill, M.D., provided Guardian with an Attending Physician's Statement in which he opined:

> Left elbow surgery + recovery. S/P surgery (pain, weakness, ↓ ROM, ↓ function) Continue controlled rehabilitation with PT. Office visit for recheck 8-19-19. [Patient anticipated to] return to previous functional levels 4-6 months post-surgery. 1-pound lifting restriction . . .

(Guardian Claim File).

29) After satisfying the policies' requisite 90-day elimination periods, Dr. Rosh submitted his May 22, 2019 claim application to Guardian in order to begin receiving the contracted-for benefits.

30) On June 11, 2019, Guardian advised Dr. Rosh in writing that it required additional information, which Dr. Rosh provided.

31) On July 19, 2019, Guardian again advised Dr. Rosh in writing that it required additional information to evaluate his claim, which he provided.

32) Dr. Rosh provided Guardian with a July 29, 2019 Claimant's Progress Report in which he reported experiencing "continued pain in left elbow, increasing with range of motion. Pain with motor functions. Continued numbness of forearm." (Guardian Claim File).

33) Dr. Rosh met with Guardian's Field Consultant, Robert Kolb, on July 31, 2019.

34) Dr. Freehill (Dr. Rosh's orthopedic surgeon) provided Guardian with an Attending Physician's Progress Report dated August 1, 2019 in which he opined as follows:

> Left forearm tendinitis, S/P left elbow surgery. ROM 0-150 [slightly illegible record] (mild pain with hyperextension) + TTP lateral epicondyle + extensor tendons. Pain but no weakness with resisted strength testing supination.
>
> Pain + stiffness + N/T along radial nerve distribution.
>
> ↑ strength, ↑ pain + stiffness.
>
> No patient transfers. No lifting more than 25lbs with [?] LUE. Limited pushing, pulling + repetitive activity with LUE.
>
> Subjective: night pain + stiffness
> Objective: mild weakness
>
> Re-start physical therapy to focus on modalities and pain control.

(Guardian Claim File).

8

35) On August 20, 2019, Guardian advised Dr. Rosh in writing that his claim was still pending and they were waiting for medical records.

36) Dr. Rosh provided Guardian with an August 27, 2019 Claimant's Progress report in which reported experiencing "continued pain in left upper extremity concentrated around elbow, bicep, forearm." (Guardian Claim File).

37) On August 29, 2019, Dr. Rosh provided Guardian with the requested SOMC CPT worksheet and hospital privileges.

38) On September 16, 2019, Dr. Rosh emailed Guardian regarding the status of his claim.

39) On September 23, 2019, Guardian informed Dr. Rosh that his claim was still pending, seemingly due to Dr. Rosh's injury having occurred after his employment with SOMC ended on June 4, 2018. Guardian also asked Dr. Rosh to complete and submit another Claimant's Progress Report by October 1, 2019.

40) Dr. Rosh provided Guardian with a September 28, 2019 Claimant's Progress report in which he reported experiencing "continued pain, some at rest, but mostly with range of motion, stiffness, numbness." (Guardian Claim File).

41) On October 14, 2019, Guardian refunded Dr. Rosh 2019 premiums totaling $7,658.35. Guardian also indicated that future premiums were going to be waived until further notice.

42) Dr. Rosh provided Guardian with an October 22, 2019 Claimant's Progress report in which he reported experiencing "continued pain, stiffness, and numbness of left upper extremity, not worsening but not improving." (Guardian Claim File).

9

43) On October 25, 2019, Guardian denied Dr. Rosh's total disability claim and issued a 1-month residual disability benefit based on the following rationale:

> You replied that in June 2018 the Southern Ohio Medical Center transitioned from utilizing local tenens for emergency room coverage to staff physicians and you were no longer able to keep your position in the emergency room. You stated after leaving the emergency room job that you planned on returning to work in emergency medicine; however, there was not an immediate need to find a job right away.
>
> \* \* \*
>
> At the time of your injury your primary occupational duties consisted of working as a business owner running and operating Rosh Review. Although you last worked as emergency room physician in June 2018, we have taken into consideration your ability to engage in the duties of emergency medicine physician . . . Although you described your work activities with Rosh Review as more of a hobby, your tax records suggest otherwise . . . Given the transition of your time and attention from the practice of medicine to your highly successful business, we are unable to conclude that your occupation at the time of disability was limited to that of an emergency room physician.
>
> \* \* \*
>
> A consulting physician reviewed all of the available medical records and opined that the left distal biceps tendon tear and surgical repair following your surgery would cause restrictions and limitations significant enough that you would have been impaired as an emergency room physician from January 11, 2019 to May 15, 2019 and as a administrator of Rosh Reviews for the period January 11, 2019 to January 29, 2019. However, there is a lack of medical information to support ongoing limitations and restrictions that would prevent you from engaging in work activities beyond May 15, 2019.
>
> Given the forgoing information we made the payment of residual benefits described above for the period ending on May 15, 2019 on an exceptional basis. Understanding you have been at work, performing material and substantial duties of your occupation, which includes your business, we are willing to consider further benefit eligibility pursuant to the terms of the residual disability riders contained in your disability policies. (Guardian Claim File).

44) On or about November 13, 2019, Dr. Rosh sent Guardian a detailed response disputing its findings. Specifically, Dr. Rosh's challenged Guardian's decision that he was (is) not totally disabled; challenged its decision to issue a 1-month residual disability benefit; challenged its decision that his occupation was no longer emergency medicine and that his new occupation was Rosh Review, LLC; and challenged its decision that he was not medically disabled from working as an emergency medicine physician. (Guardian Claim File).

45) Dr. Rosh treated with Dr. Freehill on November 21, 2019, who noted the following:

> We reviewed his MRI today. It appears that there is good healing of that distal tendon. There is some interstitial signal within this. However, I think this is normal postsurgical change. His strength is excellent. His exam is very strong. He does have some extensor tendinosis. This is consistent on the physical examination as well as on the advanced imaging. We will order some dexamethasone and recommended some additional modalities with physical therapy for strengthening and for treating that lateral tennis elbow/extensor wad tendinosis. I do not think in this particular case the patient has had maximal medical improvement with regards to his particular job with this extensor tendinosis. With certain maneuvers such as intubation or critical maneuvers in the emergency room, this could limit him and cause him some discomfort. I described to the patient that if he had a desk job or something which does not demand these kind of dynamic motions and movements that likely this would be a nonissue, however, at this juncture, I still think that this could bother him. He will continue with physical therapy. He will contact us and let us know how he is doing and if we need further evaluation.

(Exhibit 4 of Dr. Rosh's 2/18/20 Appeal).

46) Dr. Rosh notified Guardian via a January 6, 2020 communication that he had retained counsel and was going to appeal Guardian's total disability denial to try and avoid having to engage in litigation. (Guardian Claim File).

47) On January 6, 2020, Dr. Freehill (Dr. Rosh's orthopedic surgeon) provided Guardian with an Attending Physician's Progress Report in which he indicated as follows:

> Left forearm tendinitis, S/P left elbow surgery. Full elbow ROM. Good strength. Pain with testing. MRI shows healed distal biceps repair.
>
> Subjective symptoms: Pain with full extension, stiffness.
>
> Recommend avoiding painful situations (CPR, intubation). Recommend a desk job. CPR + intubation difficult.

(Guardian Claim File).

48) Guardian acknowledged Dr. Rosh's position via a letter dated January 17, 2020. (Guardian Claim File).

49) Guardian provided Dr. Rosh's medical records for review on January 22, 2020.

50) On February 18, 2020, Dr. Rosh submitted to Guardian an extensive and comprehensive appeal with supporting exhibits that detailed his reasons for disagreeing with Guardian's decision to deny total disability benefits under the Policies. (Guardian Claim File).

51) Despite substantial and compelling evidence supporting total disability under the four Policies beyond May 15, 2019, on April 2, 2020, Guardian again denied Dr. Rosh's claim for total disability benefits based on the following reasoning:

Along with your letter dated February 18, 2020 you provided additional information for our consideration including medical records from Dr. Michael Freehill, physical therapy records and a February 8, 2020 letter from Southern Ohio Medical Center that indicates Dr. Rosh's employment ended June 4, 2018 strictly due to a business decision to move away from contracting locum tenens emergency medicine physicians. On March 19, 2020 you provided videos clips from YouTube showing Dr. Rosh speaking to the media regarding the Covid-19 outbreak and later submitted a copy his most recent emergency medicine certification. We are not persuaded that this additional information supports your assertion that Dr. Rosh' s occupation was limited to the duties of an emergency medicine physician at the onset of his claimed disability.

* * *

Given the transition of Dr. Rosh' s time and attention from the practice of medicine to owning and operating a highly successful business, we are unable to find that his occupation at time of disability was limited to that of an emergency medicine physician.

At the time of Dr. Rosh's injury, his primary occupational duties consisted of working as a business owner, operator, manager and actively contributing member of Rosh Review. We don't have to prove that Dr. Rosh abandoned emergency medicine to reach this conclusion.

* * *

Thus, given there is insufficient medical evidence to conclude that Dr. Rosh would be restricted or limited in his ability to perform the job duties he was engaged in prior to his injury, either in emergency medicine or operating his business beyond May 15, 2019 and he continued his ownership, operation and management of his business thereafter, we have determined that Dr. Rosh is not totally disabled. As Dr. Rosh is not inclined to provide us with the required financial records necessary to determine any loss of income, we are unable to evaluate a claim for residual disability. Regardless, given the overall lack of medical support for impairment, we would have difficulty concluding that any loss of income he is experiencing is attributable to sickness or injury as required by the policies. (Guardian Claim File).

52) By reason of its breach of the contract of insurance, Guardian owes Dr. Rosh $18,000.00 in monthly indemnity benefits under the four policies retroactive to approximately May 16, 2019 and beyond.  It is reasonably certain that Dr. Rosh shall remain disabled under the Policies' terms and conditions, and Guardian's refusal to pay total disability benefits has created an actual case or controversy between the parties as to the issue of whether Dr. Rosh is entitled to additional benefits under the Policies inclusive of, but not limited to, waiver of premium.

**WHEREFORE**, Plaintiff, Adam Rosh, M.D., prays for the following relief against Defendant Guardian as follows:

A) Judgment against Defendant Guardian in an amount equal to all past due benefits as well as a waiver of premium and refund of premiums paid;

B) interest on all outstanding benefits determined to be due and owing;

C) declaratory judgment that Plaintiff is entitled to continue receiving benefits, provided he continues to meet the Policies' terms and conditions; and

D) costs, attorneys' fees, and any and all benefits to which he may be entitled.

V. **VIOLATION OF MICHIGAN COMPILED LAWS - CHAPTER 20**

53) MCL § 500.3416 directs that losses under a disability policy will be paid immediately upon receipt of due written proof of such loss.

54) Guardian received proof of loss.

55) MCL § 500.2006 provides for the payment of 12% interest on claims where the insurer (Guardian) is shown to have been dilatory in making timely payments to its insured and the claim is not reasonably in dispute.

56) The claim was not reasonably in dispute and Guardian has dilatorily failed to timely pay Dr. Rosh immediately upon receipt of due written proof of loss.

57) Accordingly, due to Guardian's failure to timely pay Dr. Rosh benefits, he is entitled to receive 12% penalty interest.

**WHEREFORE**, Plaintiff, Adam Rosh, M.D., prays for judgment against Defendant Guardian in the amount of an additional 12% penalty interest, along with statutory interest, costs, and attorneys' fees.

## VI. BREACH OF DUTY OF GOOD FAITH

58) Guardian, its agents, employees, and representatives owed Dr. Rosh a duty of good faith and fair dealing.

59) Guardian's conduct constitutes a breach of that duty of good faith and fair dealing.

60) As a proximate result of that breach, Dr. Rosh suffered, and continues to suffer, personal injuries.

**WHEREFORE**, Plaintiff, Adam Rosh, M.D., prays for judgment against Defendant Guardian in whatever amount this Court deems fair and just, including, but not limited to, exemplary damages, interest, costs, and attorneys' fees.

*Signature page follows.*

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**


By: <u>s/ Ilana S. Wilenkin</u>
Ilana S. Wilenkin (P61710)
Plaintiff's attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; fax (248) 932-1734
ilana@lawsmf.com


Date: May 4, 2020

**JURY DEMAND**

Plaintiff, ADAM J. ROSH, M.D., M.S., FACEP, FAAEM, through his attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., requests a jury trial in the above-captioned cause.

                Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:    s/ Ilana S. Wilenkin
         Ilana S. Wilenkin (P61710)
         Plaintiff's attorney
         30300 Northwestern Highway, Suite 108
         Farmington Hills, MI 48334-3255
         (248) 932-3505; fax (248) 932-1734
         ilana@lawsmf.com

Date:  May 2, 2020